IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

                    Plaintiff,                                4:14-CR-3086

vs.

                                                    TENTATIVE FINDINGS

DANIEL T. KUTA,

                    Defendant.

The Court has received the presentence investigation report (PSR) in this case. Kuta has objected and moved for a variance. Filings 31, 32, and 34. The government has also filed a statement regarding the PSR, as well as a brief and materials in support of its brief. Filings 38, 39, and 40.

IT IS ORDERED:

1.    The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005), and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

      (a)    give the advisory Guidelines respectful consideration within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

      (b)    resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

      (c)    impose upon the United States the burden of proof on all Guidelines enhancements;

      (d)    impose upon the defendant the burden of proof on all Guidelines mitigators;

     (e)      depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

     (f)      in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2.     Kuta has objected and moved for a variance. Filings 31, 32, and 34. In his motion for a variance, Kuta asks for a two-level reduction in the base offense level (and, as a result, in the final offense level) based upon the amendments to U.S.S.G. § 2D1.1 that became effective on November 1, 2014. *See*, United States Sentencing Commission (U.S.S.C.), Guidelines Manual, Supplement to App'x C, 64–74 (Nov. 1, 2014); U.S.S.C., Sentencing Guidelines for United States Courts, 79 Fed. Reg. 25,996, 26,001-06 (May 6, 2014). When Kuta moved for a variance, the amendments had not yet become effective. But the amendments have since taken effect, and the Court will apply the amended Guidelines at sentencing. *See* U.S.S.G. § 1B1.11(a). Thus, the Court's tentative finding is that the motion should be denied as moot.

Kuta objects (filings 32 and 34) to the PSR's inclusion of a two-level enhancement for possession of a firearm. U.S.S.G. § 2D1.1(b)(1); PSR ¶¶ 29, 38. Kuta has pleaded guilty to conspiracy to distribute methamphetamine. *See* filings 21 and 25. His co-conspirator was Luis Velez, who was charged in a separate indictment. PSR at ¶ 16. Kuta and Velez lived together in a two-bedroom apartment in Lincoln, Nebraska. Kuta told police that he sold methamphetamine for Velez. PSR at ¶¶ 18–19. In December 2013, police executed a search warrant at the apartment. They found a small quantity of methamphetamine on Kuta's person (about 3 grams) and about $3,500 in cash in his bedroom. In Velez's bedroom, police found a larger quantity of methamphetamine (about 66 grams) and another $2,700 in cash. PSR at ¶¶ 18–19.

The police also found a loaded handgun in Velez's bedroom. The weapon was hidden inside of a sock, which was in a pile of socks and other clothing on a shelf in Velez's closet, which were behind clothes hanging from a rod. Some or all of the methamphetamine found in Velez's bedroom was also found in the closet. Filing 40-5 at 1–2; PSR at ¶ 29. Although the PSR states that the closet was locked, the officer

who searched Velez's bedroom averred that it was unlocked. *Compare* PSR at ¶ 29, *with* filing 40-5 at 1.

The probation officer found Kuta should receive a two-level enhancement for possession of a firearm in connection with a drug-trafficking crime, U.S.S.G. § 2D1.1(b)(1), but this finding was not based on the firearm found in Velez's closet. Instead, this finding was based on separate reports that Kuta possessed a firearm. An unnamed witness reported that he or she observed Kuta in possession of a firearm during drug deals, that Kuta usually carried a firearm at his waist or ankle, and that he or she had previously purchased ammunition for Kuta. Additionally, certain "[i]nvestigative reports also indicated that the defendant had threatened his roommate [Velez] with a firearm at some point prior to their arrests, over what was described as 'some sort of "dominance" issue.'" PSR at ¶ 29. The probation officer found that the dangerous weapon enhancement was warranted based on this information (as opposed to the firearm found in Velez's closet). PSR at ¶ 29 & p. 24.

Kuta has objected to this finding, and denies possessing a firearm at any point. Filing 32. Because Kuta has objected to the factual allegations supporting the U.S.S.G. § 2D1.1(b)(1) enhancement, the government must present evidence at the sentencing hearing to prove the existence of the disputed facts. *See United States v. Mann*, 701 F.3d 274, 310 (8th Cir. 2012). Thus, the Court will wait until sentencing to resolve Kuta's objection.

One further matter bears noting. The government argues that the § 2D1.1(b)(1) enhancement is also warranted based on the firearm found in Velez's bedroom. *See* filing 39. On the record available at this time, the Court tentatively finds this argument to be without merit.

For § 2D1.1(b)(1) to apply, the government must prove by a preponderance of the evidence that (1) the weapon was possessed; and (2) it was not clearly improbable that the weapon was connected to the drug offense. *United States v. Garcia*, 703 F.3d 471, 476 (8th Cir. 2013). Actual or constructive possession will suffice. *United States v. Dunn*, 723 F.3d 919, 929 (8th Cir. 2013). So, the government must show that Kuta exercised ownership, dominion, or control over either the firearm or the premises in which it was found. *Id.* "If possession is established, the enhancement applies 'if the weapon was present, unless it is clearly

improbable that the weapon was connected with the offense.'" *Id.* (quoting U.S.S.G. § 2D1.1(b)(1), cmt. n.11(A)). The government proves a connection between the firearm and the offense by showing the existence of a temporal and spatial relation between the weapon, the drug trafficking activity, and the defendant. *United States v. Young,* 689 F.3d 941, 946 (8th Cir. 2012). Although the mere presence of a firearm is not enough, the government need not show that the defendant used or even touched the firearm. *Garcia,* 703 F.3d at 476.

The government has demonstrated a connection between the firearm and the drug conspiracy. The firearm was found in the same apartment where large amounts of cash and methamphetamine were being stashed. *See, e.g., id.* at 477. At this time, however, the government has not shown that Kuta personally possessed the firearm. Nor, on the current record, has the government established constructive possession.

Constructive possession of a firearm is shown when a person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself. *United States v. Chantharath,* 705 F.3d 295, 304 (8th Cir. 2013). Kuta lived in the apartment, and so the Court will assume he exercised control over the premises. But even if the Court assumes that this control extended to a closet in Velez's bedroom, that alone will not show constructive possession of the firearm.

Where there is joint occupancy of a residence, dominion over the premises by itself is insufficient to establish constructive possession. *United States v. Wright,* 739 F.3d 1160, 1168 (8th Cir. 2014). And if an item is found in an area of a residence equally accessible to all of the occupants, it raises the inference that any one or all of them possessed the item. *United States v. Wajda,* 810 F.2d 754, 762 (8th Cir. 1987). In such cases, there must be some additional nexus linking the specific defendant to the firearm. *Wright,* 739 F.3d at 1168. The current record does not establish that Velez's closet was accessible to Kuta. Even assuming it was, the government has not demonstrated an additional nexus linking Kuta to the firearm found there.

There is another, more fundamental obstacle to proving constructive possession in this instance. Proof of constructive possession generally requires evidence of knowledge of an object, the ability to control it, and

the intent to do so. *Chantharath*, 705 F.3d at 304. And there is presently no evidence that Kuta knew of the firearm in Velez's closet. Thus, the Court's tentative finding is that the government has not established constructive possession of the firearm.

The enhancement for possession of a firearm may also be imposed based upon a co-conspirator's possession of a firearm. *United States v. Brewer*, 624 F.3d 900, 907–08 (8th Cir. 2010). But the government must establish that it was reasonably foreseeable to the defendant that the co-conspirator would have possessed a weapon. *Id.* And this can only be demonstrated by proof that the defendant knew or should have known "based on specific past experiences with the co-conspirator that the co-conspirator possessed a gun and used it during drug deals." *United States v. Lopez*, 384 F.3d 937, 944 (8th Cir. 2004). The Court may not infer a defendant's knowledge based solely on the general association of firearms with drug offenses. *Id.* "To hold otherwise would unfairly penalize defendants for conduct over which they have no control." *Id.* At this time, there is no other evidence that Kuta should have foreseen Velez's possession of a firearm. But the Court will resolve this matter at sentencing.

3.    Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding paragraph, the parties are notified that the Court's tentative findings are that the presentence report is correct in all respects.

4.    If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

5.    Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the presentence report may be relied upon by the Court without more.

6.  Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 17th day of November, 2014.

BY THE COURT:

John M. Gerrard
United States District Judge